I667LEIC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

KRISTY LEIBOWITZ,

            Plaintiff,

        v.                            18 Civ. 2626 (RA)

GALORE MEDIA, INC.,

            Defendant.

------------------------------x
                                      New York, N.Y.
                                      June 6, 2018
                                      1:15 p.m.
Before:

                HON. RONNIE ABRAMS

                                      District Judge

                    APPEARANCES

LIEBOWITZ LAW FIRM PLLC
     Attorneys for Plaintiff
BY:  KATE TSYVKIN

KUSHNIRSKY GERBER PLLC
     Attorneys for Defendant
BY:  ANDREW GERBER
```

1                (In the robing room)

2                THE COURT:  Good afternoon.  I reviewed your letter
3    and the proposed case management plan.  I want to start by
4    saying I obviously have a lot of these copyright cases.
5    Particularly in a case like this, where plaintiff doesn't even
6    appear to seek statutory damages, I think it's very important
7    to keep the costs down and, you know, I'm considering requiring
8    plaintiff to show cause why a bond shouldn't be posted in this
9    case.  I'm happy to hear you out on that now.

10               MR. GERBER:  Thank you, your Honor.  As usually
11   happens on cases filed by this firm, they will bring a lawsuit
12   and then explicitly mention the fact that it costs a lot of
13   money to litigate cases, and ask for a settlement number that
14   is a multiple of the maximum they could potentially recover.

15               Here there is already an offer of judgment that has
16   been issued for what we think is double or triple what the
17   maximum they could recover and a multiple of the license fees
18   at issue.  And what seems to be the pattern is Mr. Liebowitz's
19   firm will then simply just withdraw the complaint at a point at
20   which they feel that they can't obtain the settlement
21   judgment -- order judgment -- thereby avoiding potential
22   exposure under the offer of judgment.

23               THE COURT:  Do you want to respond, or do you want to
24   respond in writing?

25               MS. TSYVKIN:  I would love to be able to oppose this

1   motion, your Honor.  I do believe it would be counter to what
2   the Court has just said, which is let's limit the costs.
3           THE COURT:  Well, on that I don't think I would award
4   attorney fees even if you one on that motion.
5           MS. TSYVKIN:  I understand, but we're trying to limit
6   the cost to something that's more reasonable.  Wouldn't a
7   better route be mediation as far as everyone presenting the
8   evidence?
9           There is not one argument that had to do with the
10  merits of the case, your Honor.  The plaintiff is in New York,
11  is a resident of New York.  I just don't see any grounds why a
12  bond should be issued.
13          The merits of the case are solid.  These are two
14  photographs.  It's just the defendant doesn't like the price
15  that was asked.  There are better days to deal with that, such
16  as negotiation, exchanging documents that evidence licensing.
17          THE COURT:  Judge Caproni in these sorts of copyright
18  cases has -- I don't know how often she does it -- but I am
19  looking at one case she did where she referred the case to
20  mediation, and ordered plaintiff to file proof of service no
21  more than three days after service has been effected, and to
22  produce to defendant by the earlier of 14 days after service of
23  process, or three business days in advance of any mediation
24  session, copies of records sufficient to show the royalty paid
25  the last three times the picture that is at issue in this case

1  was licensed, as well as the number of times the picture was
2  licensed in the last five years.
3            So, you go to mediation, you have to produce that.
4  You don't have any obligations of production before mediation.
5  Would that be productive in the first instance?
6            MS. TSYVKIN:  I think it would be definitely more
7  informative and something that we can ground the mediation on.
8  I do, however, think that the defendant has to produce what
9  benefits, advantages or gains resulted from the infringement,
10 which would mean they would have to produce some sort of
11 metrics as far as how many people visited the website, if there
12 is any advertising revenue that came out of that particular
13 infringement.  So, the obligations are reciprocal.  I'm happy
14 to produce a licensing history for my client for these
15 celebrity photographs, but it can't be one way.
16           All I'm trying to say is with the bond motion, I
17 really don't see any arguments that are being espoused about
18 the merits of the case.  The merits are very clear; it's a
19 straightforward copyright infringement case.  It's just the
20 question is how much money is this really worth.
21           THE COURT:  Right.  But it seems like your firm has a
22 practice of essentially trying to shake parties down and
23 requesting or demanding a very high settlement amount; and, if
24 they don't do it, they're going to proceed with expensive
25 discovery.

        And, as you know, there have been numerous opinions by various judges on this court relating to the behavior of your firm, and I just want to make sure that money isn't wasted.

        MS. TSYVKIN: I agree, your Honor. That's why perhaps a limited discovery just pertaining to the issues that we can ascertain to inform our settlement discussions.

        MR. GERBER: We don't think that's appropriate. Mr. Liebowitz in e-mail has already said let's proceed with discovery, after we've offered a multiple of their max potential damages. These are blogs; at most they're a couple dollars of revenue from banner ads. They know this. They know that --

        THE COURT: Can you produce that material? I mean can you sort of produce the bare minimum? Is there a way to facilitate an early resolution of this matter?

        MR. GERBER: We could. I just still am concerned that the strategy of that firm is to push things forward and to force defendants like my client to spend money.

        THE COURT: Well, that's why I'm asking is there an inexpensive way of doing it. Can we limit the amount of material that you get so that we limit the scope of discovery and the cost to your client?

        MR. GERBER: Practically speaking, I don't think we even can. I don't believe my client even has the records anymore. This page was up I think over three years ago, and my

1   client cannot even --
2           THE COURT:  For how long was it up?
3           MR. GERBER:  My client can't even find the page on
4   their server anymore.  They just don't know.  I think it was
5   probably up -- based on other pages -- at most months -- at
6   most.
7           MS. TSYVKIN:  Your Honor, I'm hearing troubling
8   things.  I'm hearing things that were on the internet within
9   the last three years, that they're no longer recoverable?
10  That's not plausible.  We deal with all kinds of sizes of media
11  and websites.
12          Everything that you've had on, you can locate, you can
13  have a record of it.  If there isn't an immaculate record, we
14  will take whatever it is that indicates what resulted from this
15  infringement.  Yet they make representations regarding the
16  substance of how little money they made readily, even though
17  they cannot locate the material and it's no longer on their
18  servers apparently.  So, I'm troubled.
19          THE COURT:  All right.  I'm going to order plaintiff
20  to show cause why it should not be required to post a bond of
21  either $5,000 or $10,000 in this action.  You can do so a week
22  from today, and then you can have a week to respond if you want
23  to.  You don't have to respond.
24          And I'm going to refer the case to the magistrate
25  judge for general pretrial purposes, to the extent there are

1    issues.  I think Judge Pitman is assigned to this case.  The
2    dates in this case management plan have been agreed to; is that
3    right?
4             MR. GERBER:  That's correct.
5             THE COURT:  OK.  Then I will sign off on this.
6             But just to clarify your point, you don't think
7    mediation would be productive at this point; is that right?
8             MR. GERBER:  We do not.  We think the time spent even
9    preparing for it would exceed our fees and the total potential
10   recovery.
11            THE COURT:  All right.  I will add a post-discovery
12   conference in here.
13            I have to tell you I think you should think about
14   whether it's -- I mean you will respond to the motion, and I
15   will decide what I think is appropriate.  That's not something
16   that you will receive attorney fees even if you win this case
17   down the line, but I think you should really think about how to
18   effectively either litigate or resolve this matter.  You're not
19   obligated to resolve it, but if you choose to litigate, I want
20   to make sure it's done in a cost efficient manner.  That's it.
21            Thanks.
22                            - - -
23
24
25